UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT J. BLABAC

       Plaintiff,

       v.               **REPORT AND RECOMMENDATION**
                                  08-CV-0849 (GLS)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I.    Introduction

Plaintiff Robert J. Blabac brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), ending his Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

## II.    Background

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

Plaintiff applied for SSI on November 2, 2000, alleging an onset date of January 15, 1987 (R. at 31-33).[3] Plaintiff alleges disability due to epilepsy, as well as shoulder, back, and mental impairments. Plaintiff's application was ultimately granted on April 9, 2001, with an onset date of November 1, 2000 (R. at 65).

On May 23, 2005, Plaintiff was informed by the Social Security Administration ("SSA") that his disability benefits would cease due to a medical improvement (R. at 86-87). Plaintiff appealed the decision and appeared *pro se* before the ALJ on December 8, 2005 (R. at 306). The hearing was adjourned in order to allow Plaintiff to obtain a representative (R. at 309). Plaintiff again appeared *pro se* at a subsequent hearing on January 31, 2006 (R. at 312). The ALJ considered the case *de novo* and, on August 24, 2006, issued a decision finding Plaintiff not disabled (R. at 23-30). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on July 9, 2008 (R. at 5-8). On August 7, 2008, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ erred in analyzing Plaintiff's mental impairment and in applying the treating physician rule.

### III.    Discussion

**A.    Legal Standard and Scope of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

---

[3] Citations to the underlying administrative record are designated as "R."

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following seven-step process to determine whether an individual's disability has continued or ended:

> (i) Step 1. Do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter? . . . .
> (ii) Step 2. If you do not, has there been medical improvement as defined in paragraph (b)(1)(i) of this section?[4] . . . .
> (iii) Step 3. If there has been medical improvement, we must determine whether it is related to your ability to do work . . .; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. . . . .
> (iv) Step 4. If we found at step 2 . . . that there has been no medical improvement or if we found at step 3 . . . that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (b)(3) and (b)(4) of this section apply. . . . .
> (v) Step 5. If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 416.921). . . .
> (vi) Step 6. If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 416.960. . . .
> (vii) Step 7. If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education, and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 416.994(b)(5)(i)-(vii).

**B.   Analysis**

**1. The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual

---

[4] "Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i).

information as well as the seven-step process set forth above: (1) The comparison point decision ("CPD") was April 9, 2001, the date of the most recent favorable decision (R. at 24); (2) At the time of the CPD, Plaintiff met Listing 11.03 (R. at 25); (3) As of May 23, 2005, Plaintiff's epilepsy with rare secondary generalization was severe (R. at 25); (4) As of May 23, 2005, Plaintiff's left eye vision problems, mild obesity, back impairments, and shoulder impairments were not severe (R. at 25-26); (5) "As of May 23, 2005, [Plaintiff] did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I" (R. at 26); (6) Plaintiff experienced medical improvement as of May 23, 2005 (R. at 26); (7) Plaintiff's medical improvement was related to work (R. at 26); (8) As of May 23, 2005, Plaintiff retained the

> residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk six hours in an eight-hour work day and sit six hours in an eight-hour work day. He could push and pull 25 pounds occasionally and 10 pounds frequently but could not climb ladders, ropes or scaffolds, operate motor vehicles, fork lifts [sic] or other motor powered equipment or work in the near proximity of moving machinery

(R. at 27); (9) Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely credible" (R. at 28); (10) Based on the Medical-Vocational Guidelines, Plaintiff "was able to perform a significant number of jobs in the national economy," as of May 23, 2005 (R. at 29). Ultimately, the ALJ found that, Plaintiff was no longer under a disability as of May 23, 2005 (R. at 30).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues

that a) the ALJ erred in analyzing Plaintiff's alleged mental impairment and in failing to obtain a psychiatric consultative examination; b) the ALJ erred in finding Plaintiff no longer met Listing 11.03 and in applying the treating physician rule; c) the ALJ erred in failing to fully develop the record at the hearing.

### a) The ALJ i) Failed to Obtain a Consultative Psychiatric Examination and, ii) the Mental Impairment Findings are Not Supported by Substantial Evidence

#### i) The ALJ Failed to Obtain a Consultative Psychiatric Examination:

Plaintiff argues that the ALJ erred in analyzing Plaintiff's mental impairment. Plaintiff's Brief, pp. 9-12.

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). However, in the event that Plaintiff "is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (internal quotations and citations omitted). Although currently represented by counsel, Plaintiff appeared *pro se* at the time of the hearing and the ALJ's decision.

In analyzing a possible mental impairment, the ALJ afforded "limited weight" to an "Adaptive Behavior Assessment System . . . because it [wa]s based on self-reported (or in this case parent-reported) behavior compared to that of the general population" (R. at 28). The ALJ then went on to find that "there is nothing in the medical evidence of record indicating a mental impairment. The consulting examiner did not note any mental

6

abnormalities in the mini mental status examination." Id. The ALJ also noted that Plaintiff had indicated to the SSA in April 2005 that he was not experiencing any emotional impairments (R. at 28, 189-90).

The ALJ's findings are not supported by substantial evidence. First, the record contains a substantial amount of medical evidence supporting the existence of a mental impairment. For example, on December 5, 2000, Plaintiff underwent a consultative psychiatric examination with Mary Ann Moore, Psy.D., for his initial disability benefits application (R. at 222-26). Dr. Moore diagnosed Plaintiff with a depressive disorder as well as social phobia with the beginnings of agoraphobia (R. at 225). Dr. Moore opined that Plaintiff

> [i]s able to follow and understand simple directions and instructions and perform simple rote tasks under supervision. He does have the ability to maintain attention and concentration for tasks. He may have some difficulty making appropriate decisions based on his anxiety as well as his depressive symptomatology. He also may have some difficulty learning new tasks due to the difficulties that his symptomatology causes with his cognitive abilities. Same thing with performing complex tasks to relate adequately one-on-one with an individual. He was generally cooperative and friendly and quite engaging, although he indicates that when there is more than 1 person it becomes very anxious provoking for him, and he has actually isolated himself. He may have difficulty dealing with stress as well and would probably begin to have some sort of panic attack or, as he states, possibly an epileptic seizure and may become more depressed. The allegations are consistent with depression as well as anxiety for this individual

(R. at 225). Although this examination occurred several years prior to the date Plaintiff's disability benefits were discontinued, it is indicative of a current mental impairment.

Ms. Yahna Soloweij, a masters in social work student intern, testified at Plaintiff's May 1, 2006 hearing (R. at 312, 340). Ms. Soloweij interned at the Epilepsy Foundation and met Plaintiff when he requested help preparing for his social security hearing (R. at

340-42). Ms. Solewiej stated that she began "kind of like some short counseling sessions talking about family and some problems that he was experiencing with not, [sic] with having a hard time leaving his home, not wanting to go outside, fear of having seizures in public, fear of people laughing at him in, in public, [sic] those kinds of things at which time I referred him to our Adult Support Group and a few other things" (R. at 343). Ms. Solewiej also testified that she "noticed that he has some cognitive issues. He doesn't seem to process some of the things that we talk about and tends to keep telling me the same thing over and over. On several occasions he's called me and then called me a half an hour or an hour later to ask me the same question that he had already asked me . . . ." Id.

On May 1, 2006, Ms. Soloweij and Ms. Debra Lewis, a licensed masters in social work, wrote a joint letter to the ALJ (R. at 280). Like Ms. Soloweij, Ms. Lewis was also an employee of the Epilepsy Foundation. Id. This letter summarized a recent Adaptive Behavioral Assessment System ("ABAS") evaluation that Ken Trasher, Ph.D.,[5] had scored (R. at 280). The ABAS assessed Plaintiff's functioning, as reported by Plaintiff's parent (R. at 280-90). The ALJ granted the ABAS "limited weight because it [wa]s based on self-reported (or in this case parent-reported) behavior compared to that of the general population" (R. at 28). Although the ALJ was correct in noting that the assessment was reported by Plaintiff's parent, he failed to state that the assessment was scored by a psychologist, Dr. Thrasher (R. at 280, 290). Moreover, the ALJ failed to weigh, or even acknowledge Dr. Thrasher's opinion, as stated by Ms. Soloweij and Ms. Lewis, that "a score of 62 is a means score greater than two standard deviations of a

---

[5] There was no indication in the record that Dr. Thrasher was Plaintiff's treating psychologist.

non-disabled person and indicates performance worse than 99% of the general population"[6] (R. at 280). Indeed, the ALJ weighed only the diagnostic tool, not the medical opinion. The ALJ has an obligation "to consider relevant and probative evidence which is available to him." Lopez v. Sec'y of Dep't of Health & Human Sevs., 728 F.2d 148, 150-51 (2d Cir. 1984). By failing to acknowledge Dr. Thrasher's opinion, the ALJ ignored probative medical evidence indicative of a medical impairment.

There is also evidence from non-medical sources, including Plaintiff himself, that he was afflicted with a mental impairment. For example, although Plaintiff told the SSA in April 2005, that he was no longer experiencing any emotional problems, his testimony indicates otherwise (R. at 189-90). Plaintiff testified at the January 31, 2006 hearing that

> I don't have too many friends lately to think about. I don't go out too many places. For some reason I have this phobia with being around crowds and stuff. I even go out, back out about going to birthday parties coming up for an excuse to make it sound just like I needed to stay home when, in essence, that's why I was staying home

(R. at 312, 325). Moreover, the SSA noted that at an August 24, 2005, disability hearing, Plaintiff testified that "he fe[lt] depressed but doesn't receive services" (R. at 109).

Plaintiff's brother, Stephen Blabac, Jr., wrote a letter[7] on January 25, 2006 (R. at 274). Mr. Blabac believed that his "brother's ability to reason things out and respond in a normal manner to life's problems ha[d] been compromised by his lifetime of taking prescription drugs to control his seizures." Id. Mr. Blabac also stated that "[a]t one time

---

[6] The Court acknowledges that Dr. Thrasher's opinions were stated in the letter from Ms. Soloweij and Ms. Lewis. Thus, the opinions were not directly offered by Dr. Thrasher but only communicated through others. Although hearsay may be in an issue in another Court, that does not appear to be the case here. See 20 C.F.R. §§ 404.950(c), 416.1450(c) ("The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court.").

[7] The letter was addressed "To Whom It May Concern" (R. at 274).

[Plaintiff] was able to hold down a job . . . as a mechanic . . . . Now these things seem to overwhelm him." Id. Mr. Blabac noted that Plaintiff "refuse[d] to participate in family events outside of my Mother's home where he has lived for over 9 years. He is afraid of having an 'attack' . . . . This also extends to most any public situation, although under pressure he does do some small shopping for groceries and prescriptions." Id. Ultimately, Mr. Blabac stated that Plaintiff "ha[d] changed from someone with quite an outgoing personality to one who [wa]s generally frightened to leave home." Id. Mr. Blabac's letter is consistent with testimony from both Plaintiff and Ms. Soloweij.

Mark Murdock also testified at the January 31, 2006 hearing (R. at 337, 312). Mr. Murdock worked at the Epilepsy Foundation as a Medicaid Service Coordinator (R. at 337). Mr. Murdock described his position as "basically a case worker that works with people who have epilepsy" (R. at 337). Mr. Murdock stated he discovered through conversations with Plaintiff that "he has suffered short term memory loss from his seizures and has what they call absence seizures" (R. at 339).

Finally, the ALJ was correct in noting that "[t]he consulting examiner did not note any mental abnormalities in the mini mental status examination" (R. at 28). However, the ALJ failed to acknowledge that Dr. Pranab Datta, an SSA consultative physician, performed primarily orthopedic and neurologic examinations (R. at 247-55). There is no indication from the record that Dr. Datta was either a psychiatrist or a psychologist.

Thus, ALJ's contention that "there is nothing in the medical evidence of record indicating a mental impairment" is not supported by substantial evidence (R. at 28).

### ii) ALJ erred in failing to obtain an SSA consultative psychiatric examination.

Plaintiff argues that the ALJ erred in failing to obtain an SSA consultative psychiatric examination. Plaintiff's Brief, pp. 9-12.

Barring the possibility that Dr. Datta could be considered a qualified consultative psychiatric examiner, the ALJ erred in failing to obtain an SSA Consultative psychiatric examination. And, the record does not support that Dr. Datta fulfilled that role. The mini mental does not suffice under the circumstances. Thus, ALJ's contention that "there is nothing in the medical evidence of record indicating a mental impairment" is not supported by substantial evidence (R. at 28).

Because Plaintiff was not receiving any psychiatric treatment, the ALJ erred in failing to obtain a current psychiatric consultative examination to evaluate his mental functioning (R. at 189); 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."). The Court also notes that, because Plaintiff appeared *pro se* at the time of the hearing, the ALJ's duty to develop the record was heightened. See Cruz, 912 F.2d at 11 (internal quotations and citations omitted) (If a claimant "is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.").

Moreover, the mini mental examination does not suffice to satisfy the ALJ's obligations in this regard. Indeed, the Court is aware that Plaintiff underwent a "mini mental status" examination during the neurologic consultative examination with SSA

physician, Dr. Datta (R. at 253). However, as previously stated, there is no indication from the record that Dr. Datta was either a psychologist or psychiatrist. The regulations suggest that a psychiatrist or psychologist must complete a consultative psychiatric examination. See 20 C.F.R. § 404.1519g(a) (a consultative examination must be complete by a "qualified medical source"); § 404.1519g(b) (a qualified source must "have the training and experience to perform the type of examination or test we will request"); see also 20 C.F.R. § 404.1503(e) ("An initial determination . . . where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment."). Thus, the Court cannot conclude that this "mini mental status" examination absolved the ALJ of his duty to develop the record by obtaining a psychiatric consultative examination.

Based on the foregoing, the Court recommends remand in order to allow the ALJ to obtain a consultative psychiatric examination and to re-evaluate Plaintiff's alleged mental impairments.

### b) The ALJ Erred in Applying the Treating Physician Rule

Plaintiff argues that the ALJ erred in finding he no longer met Listing 11.03. Plaintiff's Brief, pp. 7-9. Plaintiff bases his argument largely on the ALJ's failure to properly apply the treating physician rule to the opinions from Plaintiff's treating neurologist, Dr. Paul F. Kent. Id.

In order to meet Listing 11.03, a claimant must show:

nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by

> detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postical manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Here, the ALJ found that Plaintiff did not meet Listing 11.03 "because [the] claimant was not having seizures as frequently as that listing required nor did he have alteration of awareness or loss of consciousness and transient postictal manifestations or significant interference with activity during the day" (R. at 28). Plaintiff argues that evidence in the record, including the opinions of Plaintiff's treating physician, establishes that Plaintiff meets Listing 11.03. Plaintiff's Brief, pp. 7-9.

According to the "treating physician's rule,"[8] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not

---

[8] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

   Plaintiff began treatment with Dr. Kent on June 25, 2002 (R. at 231-32). On January 25, 2006, Dr. Kent wrote a letter "in regards [to Plaintiff's] Social Security Hearing" (R. at 279). In that letter, Dr. Kent opined that Plaintiff was experiencing "intractable partial seizures with rare secondary generalization. The presumed etiology is post-traumatic." Id. Dr. Kent noted that "[c]hanging [Plaintiff's] anticonvulsant treatment to Lamictal has improved his seizures and reduced side effects. Unfortunately, he continues to have small seizures almost on a daily basis." Id. Dr. Kent stated the seizures consisted of "a funny smell followed by a slurring of speech and a brief impairment of consciousness." Id. Dr. Kent noted that an "MRI scan in July 2002 was unremarkable. An EEG in July 2004 showed clear-cut epileptiform discharges occurring from the right frontal head region." Id. Dr. Kent stated that "[t]o improve seizures in the future, his Lamictal will be increased to the maximum dosage, and if that should fail, Keppra, another anticonvulsant, will be tried. If that should fail, surgical options will be explored . . . ." Id. Dr. Kent opined that "[b]ecause of the frequent nature of his seizures, he will obviously need to maintain seizure precautions including not driving, but because they occur almost on a daily basis, I believe he will not be able to work." Id.

In evaluating Dr. Kent's opinions, the ALJ began by finding that "Dr. Kent's opinion that the claimant is unable to work is an opinion on an issue reserved for the Commissioner, and [is not] entitled to controlling weight" (R. at 28). The ALJ's finding is made in accordance with the applicable law. 20 C.F.R. § 404.1527(e)(1) (medical source opinions concerning whether an individual can work is a decision reserved to the commissioner). The ALJ then went on to find that Dr. Kent's "opinion regarding claimant's need for seizure precautions is given considerable weight because it is consistent with his progress notes which are thorough with a good longitudinal history" (R. at 28).

A physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Here, the ALJ failed to offer any reason for why he was not affording Dr. Kent's opinions controlling weight. Instead, the ALJ stated that Dr. Kent's opinion concerning "seizure precautions [wa]s given considerable weight because it [wa]s consistent with his progress notes which [we]re thorough with a good longitudinal history" (R. at 28). Although arguably, the ALJ erred in failing to grant controlling weight to this opinion, the error, if any, is harmless. Indeed, the ALJ included Dr. Kent's restriction to "operate motor vehicles, fork lifts [sic] or other motor powered equipment or work in the near proximity of moving machinery" in the RFC (R. at 27). Thus, although the ALJ stated he afforded the opinion only "considerable weight," the ALJ's inclusion of Dr. Kent's opinion in the RFC essentially amounts to granting the opinion controlling weight. See Jones v. Barnhart, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7,

2003) (internal citations omitted) (finding harmless error in the ALJ's failure to grant weight to Plaintiff's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them"); Walzer v. Chater, 1995 WL 791963, at *9 ("[T]he ALJ's failure to [discuss a report completed by Plaintiff's treating physician] was harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision."); Pease v. Astrue, 2008 WL 4371779, at *8 (N.D.N.Y. Sept. 17, 2008) (internal citations omitted) ("The ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians . . . . Therefore, the ALJ's failure to comment on the weight of evidence was harmless error, and does not provide a basis for a remand to the Commissioner.").

  However, the Court cannot find that the ALJ's other errors in applying the treating physician rule were harmless. The foregoing represents the ALJ's entire analysis of the weight to afford Dr. Kent's opinions. Indeed, the ALJ granted weight to two specific opinions while ignoring the remainder of Dr. Kent's letter (R. at 28). Notably, the ALJ failed to grant weight to two important aspects of Dr. Kent's opinions: that Plaintiff was experiencing seizures on a daily basis and was briefly unconscious during these episodes (R. at 279). The ALJ found that Plaintiff did not meet Listing 11.03, in part, "because [the] claimant was not having seizures as frequently as that listing required nor did he have alteration of awareness or loss of consciousness" (R. at 28). Listing 11.03 requires seizures "occurring more frequently than once weekly." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, Dr. Kent's opinion that Plaintiff was experiencing daily seizures meets this criterion. Dr. Kent's opinion that Plaintiff was experienced "a brief

impairment of consciousness" complies with the Listing requirement that Plaintiff experience either "alteration of awareness or loss of consciousness" (R. at 279); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ's failure to weigh, or even acknowledge, the opinions from Dr. Kent that support the finding that Plaintiff meets Listing 11.03 was error. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (finding error where the ALJ simply stated he was not granting Plaintiff's treating physicians controlling weight); see also 20 C.F.R. § 404.1527(d) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive."); Lopez v. Sec'y of Dep't of Health & Human Sevs., 728 F.2d 148, 150-51 (2d Cir. 1984) (the ALJ has an obligation "to consider relevant and probative evidence which is available to him").

Moreover, the Court notes that Plaintiff submitted additional evidence from Dr. Kent to the Appeals Council. This new evidence consisted of a letter dated March 6, 2007, a medical record also dated March 6, 2007, and a questionnaire completed on September 18, 2007 (R. at 300-05). These records "bec[ame] part of the administrative record for judicial review when the Appeals Council denie[d] review of the ALJ's decision." Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). In the questionnaire, Dr. Kent opined that "[i]t [was] reasonably consistent with the medical impairments that claimant[']s reported seizures would occur on an almost daily basis with attendant loss of consciousness for some period of time" (R. at 305). Again, these opinions support two of the criterion in Listing 11.03. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The Court acknowledges that there appears to be some inconsistency in Plaintiff's statements regarding the frequency and nature of his seizures. For example, on April 4, 2005, Plaintiff appears to have told the SSA neurologic consultative examiner

that "[h]e [wa]s almost seizure-free since his medication was changed" (R. at 252). Dr. Kent also noted in March 2003 that Plaintiff had been free of seizures since changing his medication (R. at 242). However, Dr. Kent stated that Plaintiff was experiencing "small seizures almost on a daily basis" in his January 25, 2006 letter (R. at 279). The ALJ had an opportunity to question Plaintiff about the possible discrepancies at the hearing, but failed to do so. Regardless, this inconsistency in the record does not absolve the ALJ of his duty to consider and appropriately weigh all of Dr. Kent's opinions, or for that matter, to inquire further of Dr. Kent. See 20 C.F.R. § 404.1527(d) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive.").

Because the ALJ erred in applying the treating physician rule, the Court will not determine whether the ALJ's other findings, in regards to Listing 11.03, were supported by substantial evidence.

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to re-evaluate the opinions from Dr. Kent, including the opinions submitted to the Appeals Council.

### c) On Remand, the ALJ Must Develop the Record at the Hearing

Plaintiff argues that the ALJ failed to fully develop the record at the hearing by questioning the witnesses about Plaintiff's mental impairments. Plaintiff's Brief, pp. 10-12. The Court has previously recommend remand for failure to properly develop the record by failing to obtain a psychiatric consultative examination. Therefore, on remand, at the hearing the ALJ must inquire into any and all impairments of which the ALJ has evidence.

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:   Syracuse, New York
         November 30, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:   Syracuse, New York
         November 30, 2009